IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No.: 7:12-CV-123-D

|  |  |
|---|---|
| COUNTY OF BRUNSWICK and BRUNSWICK COUNTY PLANNING BOARD, )<br><br>Plaintiffs, )<br><br>v. )<br><br>BOND SAFEGUARD INSURANCE COMPANY, )<br><br>Defendant. ) | **BRUNSWICK COUNTY'S RESPONSE IN OPPOSITION TO BOND SAFEGUARD INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY** |

Plaintiffs County of Brunswick and Brunswick County Planning Board (collectively, "Brunswick County") oppose Defendant Bond Safeguard Insurance Company's ("Bond Safeguard") Motion to Dismiss for Failure to Join a Necessary Party ("Motion") because the absent party identified in the Motion is neither necessary nor indispensable to this action.

## INTRODUCTION

Brunswick County filed this lawsuit to enforce subdivision bonds that Bond Safeguard issued to guarantee payment of the cost to complete the infrastructure in a subdivision. The deadlines to complete the infrastructure have long expired. A North Carolina state statute – the Permit Extension Act – has extended those deadlines as they apply to the developer. But the plain language of the Act, as confirmed by the Fourth Circuit, dictates that Bond Safeguard does not and cannot benefit from that extension. In other words, the Permit Extension Act allows Brunswick County to enforce the subdivision bonds now – and separately – against the surety.

The Motion in effect constitutes Bond Safeguard's attempt to benefit from the Permit Extension Act. Bond Safeguard argues that the developer must be joined so that it may assert its

defenses, but each of the "defenses" to which the Motion refers is based on the Permit Extension Act. Bond Safeguard further argues that the developer will be prejudiced because Bond Safeguard may later assert an indemnification action; because a judgment may interfere with construction; and because complete relief cannot be provided without the developer. But the potential for an indemnification action does not render the developer a necessary and indispensable party; it is difficult to understand how a potential multi-million dollar influx of funding will harm the efforts to complete the infrastructure, which have been negligible for the past couple of years; and the County seeks to recover only the face amount of the Bonds, which is relief that Bond Safeguard itself must provide.

Brunswick County's Unified Development Ordinance requires subdivision bonds so that the County has a simple avenue – separate from the developer – to collect the cost to complete guaranteed infrastructure improvements. Having accepted a premium and posted a subdivision bond to fulfill that purpose, Bond Safeguard now attempts to frustrate that very purpose by dismissing this action and delaying Brunswick County's recovery. The Motion should be denied.

## FACTUAL BACKGROUND

**I.      The Purpose of a Subdivision Bond Is To Guarantee Payment of the Cost To Complete Subdivision Infrastructure.**

The Brunswick County Unified Development Ordinance ("UDO") requires developers to guarantee the payment of the cost to complete the infrastructure to be installed in a subdivision. Declaration of J. Leslie Bell ("Bell"), ¶3. Under the UDO, a developer may provide this guarantee by posting a letter of credit, a cash security deposit, or by obtaining a bond from a surety financial guarantee company. Bell, ¶4. The purpose of these guarantees is to provide Brunswick County with a prompt and simple mechanism by which to obtain payment of the

costs to complete subdivision infrastructure without having to involve the developer or other third parties. Bell, ¶5.

## II. Bond Safeguard Guaranteed Payment of the Cost To Complete the Infrastructure in Seawatch.

Bond Safeguard issued nine subdivision bonds (the "Bonds")[1] to guarantee payment of the cost to complete the infrastructure in the Seawatch at Sunset Harbor subdivision ("Seawatch") in Brunswick County, North Carolina. Complaint, ¶¶ 5-24 and Exhibits A-H. When the Bonds were issued, they provided Brunswick County with a total financial guarantee of $9,392,259.69. Id. After a portion of the guaranteed improvements were completed between 2008 and November 2010, Brunswick County reduced the total guaranteed amount to $7,860,716.01. Id. at ¶¶ 25-31 and Exhibit I.

## III. The Infrastructure Remains Incomplete and the Developer Has Financial Problems.

Since the County reduced the total amount of the Bonds in November 2010, the developer of Seawatch has installed minimal, if any, additional infrastructure. For instance, the developer submitted to the County Opinions of Probable Cost ("OPCs") in August 2011, which indicated that the developer had completed minimal additional infrastructure since November 2010. Declaration of William Pinnix ("Pinnix"), ¶4. To the County's knowledge, no additional infrastructure has been completed since August 2011. Id.

Publicly available court filings and newspaper reports indicate that serious financial difficulties have beset the Principal to the Bonds, Seawatch at Sunset Harbor, LLC (the "Developer"). Bank of America, the primary lender for the Developer and related companies controlled by Mark Saunders, recently terminated its line of credit and sued it for approximately

---

[1] One of the Bonds – the Pump Station Bond – is labeled "Performance Bond," but is otherwise identical to the subdivision bonds and was similarly provided pursuant to the UDO. See Complaint, Exhibit A.

$78 million.  Pinnix, ¶9.  The Developer owes back taxes to Brunswick County in an amount in excess of $3,500,000.00.  Id.  In fact, some of these unpaid taxes relate to lots still owned by the Developer in Seawatch.  Id.

In light of the lack of any meaningful recent progress in completing the Seawatch infrastructure and the pending legal proceedings and back taxes, the Developer does not appear to have the ability or resources to complete the infrastructure improvements in Seawatch. Pinnix, ¶10.  In the meantime, hundreds of citizens to whom the Developer sold lots in Seawatch are left without basic infrastructure and thus without meaningful use of their property.  Pinnix, ¶5.

## IV.    Payment from Bond Safeguard Is Due.

The Bonds require payment by Bond Safeguard unless the Developer completes the guaranteed infrastructure improvements by the deadlines set out in its Modification to Improvement Guarantee Agreements with the County.  Pinnix, ¶6.  Those deadlines expired between October 5, 2010 and February 2011, except for the improvements in phases 10A and 10B, which were to be completed by September 2011 and February 2012, respectively.  Pinnix, ¶7.  Bond Safeguard's payment under the Bonds is thus overdue.

The Developer's assertion that the Permit Extension Act has extended its deadlines to complete the infrastructure is not relevant to Bond Safeguard's liability under the Bonds.  See County of Brunswick v. Lexon Ins. Co., 710 F.Supp.2d 520, 522 (E.D.N.C. 2010) (Permit Extension Act does not apply to surety), aff'd, 425 Fed. Appx. 190, 192-93 (4th Cir. 2011) ("[the surety's] argument that its obligations under the Bonds should be extended fails because the Permit Extension Act, on its face, is inapplicable to the Bonds").  Lexon, 425 Fed. Appx. 190 at 193; see also International Fidelity Ins. Co. v. Waterfront Group NC, LLC, 2011 WL 4715155,

*3 (W.D.N.C. Oct. 6, 2011) (No. 3:11-CV-00116-W) (county free to enforce subdivision bonds against surety "at any time" even though completion deadline for the developer extended by the Permit Extension Act). By its terms and as applied by the Fourth Circuit and other courts, the Permit Extension Act does not benefit Bond Safeguard.

## V.     Bond Safeguard Has Refused To Honor the Bonds.

By letter dated March 8, 2012, Brunswick County called on Bond Safeguard to perform under the Bonds. Complaint, ¶ 36. Bond Safeguard did not respond to Brunswick County's demand other than to request information. Id. The information was provided by the County, but Bond Safeguard made no payment. Accordingly, Brunswick County filed this lawsuit.

The County chose to file this lawsuit in federal court because it provides a more structured process, from the proceedings before the district court, to the appellate phase, and ultimately to enforcement of a judgment against a foreign company, like Bond Safeguard. Particularly in light of Brunswick County's experience with Bond Safeguard's litigious affiliate, Lexon Insurance Company, the federal forum is better suited to preserve the relative simplicity intended by the County's subdivision infrastructure financial guarantees.

Brunswick County's Complaint reflects the simple process intended by these guarantees. It names one defendant and is just six pages long, plus the Bonds and a summary of the guaranteed amounts. Bond Safeguard seeks to complicate this case by forcing the County to litigate against numerous parties in state court and by attempting to benefit indirectly by the Permit Extension Act, which Bond Safeguard is not entitled to raise. The Developer is not a necessary party, and Bond Safeguard's Motion should be denied.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 19 must be denied unless the movant establishes both that (1) the absent party is "necessary" to the action under Rule 19(a), and (2) the party is "indispensable" under Rule 19(b). Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (affirming denial of motion to dismiss based on non-joinder of party who would destroy diversity jurisdiction). Dismissal of a case for non-joinder is a "drastic remedy that should be employed only sparingly." Cellectis SA v. Precision Biosciences, Inc., 2009 WL 6319263, *4 (E.D.N.C. Dec. 8, 2009) (No. 5:08-cv-119-H) (denying motion to dismiss for non-joinder). Courts are extremely reluctant to grant such a motion unless prejudice or inefficiency "will certainly result absent dismissal." Id.; RPR & Assocs. v. O'Brien/Atkins Assoc., 921 F. Supp. 1457, 1463 (M.D.N.C. 1995) aff'd on other grounds, 103 F.3d 120 (4th Cir. 1996) (table) ("federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and dismissal will be ordered only when … serious prejudice or inefficiency will result").

A motion to dismiss for non-joinder of an indispensable party is governed by Rule 12(b)(7). See Mainstream Const. Group., Inc. v. Dollar Prop., LLC, 2010 WL 2039671, *1 (E.D.N.C. May 20, 2010) (No. 7:09-cv-148). The movant bears the burden of proof, and the parties may present affidavits or other evidence outside the pleadings. Id. The undisputed evidence submitted regarding the Motion shows that the County may proceed against Bond Safeguard.

### Principals To Financial Guarantees Are Not Necessary Parties

As Bond Safeguard notes in its brief, courts frequently hold that the principal to a debt instrument is not a necessary party to an action against the surety. See Brief at p. 9 (citing

cases).  Bond Safeguard attempts to distinguish those cases by stating that under a subdivision bond, "the claim by the government entity is to complete the improvements," and then arguing that the developer must be integrally involved in that process.  Id. at p. 6.  But Brunswick County does not seek an order of specific performance requiring that the guaranteed improvements be completed.  See Complaint at p. 4 (Request for Relief seeking a sum certain).  To the contrary, the County seeks to recover the bonded amount.  Id.

Perhaps unlike the generic "development/subdivision bonds" discussed in the general treatise cited by Bond Safeguard (see Brief at pp. 5-6), the Bonds required by the Brunswick County UDO are precisely akin to financial guarantees.  The UDO allows developers to post a financial guarantee by posting a letter of credit, a cash security deposit, *or* by obtaining a bond from a surety financial guarantee company.  Bell, ¶4.  The Bonds themselves do not contemplate any construction by Bond Safeguard, but rather provide for the payment of money: the surety is "held firmly bound unto Brunswick County … in the sum of" the bonded amount, "for which payment well and truly be made."  See Exhibits A-H.  Indeed, most of the Bonds here replaced letters of credit.  Id. at Exhibits B, D-H.  Based on Bond Safeguard's own contention – that a principal to a debt instrument is not a necessary party – the Developer is not a necessary party.

<u>Principals to Performance Bonds Are Not Necessary Parties</u>

Nor are the principals to a construction-related surety bond generally held to be necessary parties.  In a lawsuit very similar to this one, this Court denied motions by surety Lexon Insurance Company[2] to add the principal to the subdivision bond as well as to join the current

---

[2] As found by this Court, Lexon Insurance Company is an affiliate of defendant Bond Safeguard Insurance Company.  See County of Brunswick v. Lexon Insurance Company, No. 7:09-cv-60 (E.D.N.C. Aug. 8, 2010) (denying motion to stay pending appeal because supersedeas bond proposed by Lexon was issued by Bond Safeguard, which was an affiliate that was already bound to bear a portion of the judgment).

owners of the subdivision to which the bonds related. See County of Brunswick v. Lexon Insurance Company, 710 F. Supp. 2d 520, 523 (E.D.N.C. 2010) aff'd, 425 Fed. Appx. 190 (4th Cir. 2011); see also Selective Ins. Co. of Am. v. Glen Wilde, LLC, 2012 WL 1884533 (W.D.N.C. May 23, 2012) (No. 5:12-cv-34) (denying motion to dismiss for non-joinder of contractor-principal in suit by surety to declare surety bonds unenforceable); United States v. American Druggists' Ins. Co., 627 F. Supp. 315, 317 (D. Md. 1985) ("a surety's liability is independent of that of the principal, the principal is therefore not an indispensable party"); Crain & Denbo, Inc. v. Harris & Harris Const. Co., 252 N.C. 836, 839-40, 114 S.E.2d 809, 811 (1960) (plaintiff may separately pursue principal and surety on a performance bond). It is thus well established that the principal to a performance bond is not a necessary party in an action against the surety.

The cases cited by Bond Safeguard do not contradict this general rule and are distinguishable from this case. For instance, the court in Town of Huntington v. Am. Mfrs. Mut. Ins. Co. began its analysis by stating:

> At the outset, the court recognizes, and the parties do not dispute, that in the ordinary course, a principal is not a necessary party in an action brought to recover on a surety bond.

267 F.R.D. 449 (E.D.N.Y. 2010) (citations omitted). The court departed from that general rule only because the obligee asserted a claim for breach of a settlement agreement to which the surety was not a party and which was "subject to the continuing jurisdiction of the state court." 267 F.R.D. at 453. The court thus dismissed the case, indicating that the obligee could invoke the enforcement mechanism in the state court settlement agreement. Id. The Town of Huntington case provides no support for Bond Safeguard's Motion. To the contrary, it reiterates the general rule that a principal is not a necessary party.

The other cases cited by Bond Safeguard are similarly distinguishable. See <u>Cleland Const. Co., Inc. v. Balfour Beatty Const., Inc.</u>, 229 F.R.D.521, 525 (D.S.C. 2005) (subcontractor was necessary party because he was responsible for alleged breach of implied warranty of plans and specifications; questions at issue were already pending in separate action in state court); <u>Underpinning & Foundation Skanska, Inc. v. Berkeley Reg. Ins. Co.</u>, 262 F.R.D. 196, 200 (E.D.N.Y. 2009) (engineer was necessary party because he was responsible for allegedly defective design, supervision, and inspection; parties were already involved in separate action in state court); <u>United States Fid. & Guar. Co. v. Harriss & Covington Hosiery Mills, Inc.</u>, 119 F. Supp. 566, 566-67 (M.D.N.C. 1954)[3] (concluding with minimal analysis that contractor was necessary party because its interests were identical to the surety's). Here, there is no separate state court action involving the Developer; the County is not seeking to recover under a performance bond for defective performance; and, in light of the Permit Extension Act, Bond Safeguard and the Developer's interests are not identical. The cases cited by Bond Safeguard provide no basis to ignore the general rule that a principal is not a necessary party to an action against a surety.

## <u>ARGUMENT</u>

### I. The Developer Is Not a Necessary Party.

The Developer is not a necessary party under Rule 19(a) because (A) this Court can grant complete relief among the existing parties; (B) a judgment in this case will not impair or impede the Developer's ability to protect its interests; and (C) a judgment in this case will not subject Bond Safeguard to a substantial risk of incurring double, multiple, or inconsistent obligations.

---

[3] <u>United States Fid. & Guar. Co. v. Harriss & Covington Hosiery Mills, Inc.</u> has been cited by only one case since it was published in 1954. That case, which did not deal with sureties or necessary parties, was then reversed by the Fourth Circuit. See <u>American Ins. Co. v. Lester</u>, 120 F. Supp. 937 (S.D. W.Va. 1954) <u>rev'd by</u> 214 F.2d 578 (4th Cir. 1954).

Because Bond Safeguard does meet the requirements under Rule 19(a), its motion should be denied.

A.    This Court Can Grant Complete Relief Among Existing Parties.

Brunswick County seeks the following relief in this lawsuit:  "Brunswick County have and recover payment in the amount of $7,860,716.01 from Bond Safeguard, plus interest and costs as allowed by law."  Complaint at p. 6.  Bond Safeguard issued the Bonds, which guarantee that amount.  Bond Safeguard is the only party required to afford complete relief.[4]

Neither of Bond Safeguard's arguments on this point has merit.  Bond Safeguard first argues that the Bonds "call for 'completion' of the 'improvements" and that this relief must include the Developer, who owns the subdivision.  Brief at p. 13.  But the Bonds do not, in fact, call for completion of the improvements by Bond Safeguard.  Rather, the Bonds provide that Bond Safeguard is "held firmly bound unto Brunswick County … in the sum of … ($1,108,163.00) … for which payment well and truly be made …."  Complaint, Exhibit E. Moreover, Brunswick County is not seeking an order of specific performance with respect to the construction of the subdivision infrastructure; the County is simply seeking to recover the cost to complete the guaranteed improvements, which is the purpose of the Bonds.  See Complaint at p. 6.

Bond Safeguard's argument that the principal sum of the Bonds is insufficient to construct all of the guaranteed improvements similarly does not mean that the Court cannot provide complete relief.  Again, the County seeks the amount guaranteed by the Bonds.  Bond Safeguard is the only party needed to provide that relief.

---

[4] The "complete relief" requirement applies to "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought."  United States v. County of Arlington, 669 F.2d 925, 929 (4th Cir. 1982)

B.    The Developer's Ability To Protect Its Interests Will Not Be Impaired.

Bond Safeguard contends that disposition of this action will impair the Developer's interests because (1) calling on the Bonds "prematurely" will hinder the Developer's ability to construct the guaranteed improvements; (2) the Developer "has many defenses" to this action that it wishes to raise; (3) the Developer "desires to complete the improvements and control the means and costs … without interference by the Plaintiffs"; (4) a judgment against Bond Safeguard may collaterally estop the Developer in a later action by the County; and (5) a judgment may give rise to a "future indemnity claim by Bond Safeguard" against the Developer. See Brief at pp. 13, 15-16.  None of these arguments has merit.

1.    Brunswick County's action is not premature and may in fact assist the Developer in completing the infrastructure.

This lawsuit is not premature.   The Permit Extension Act allows the immediate enforcement of surety bonds even if the Act has extended the deadlines that apply to a developer. See Session Laws 2009-406, 2009-572 and 2010-177:

> This act shall not be construed or implemented to … [m]odify any person's obligations or impair the rights of any party under contract, including bond or other similar undertaking.

Act, Section 5, ¶ 8; County of Brunswick v. Lexon Ins. Co., 710 F. Supp. 2d 520, 522 (E.D.N.C. 2010) (Permit Extension Act does not apply to surety), aff'd, 425 Fed. Appx. 190, 192-93 (4th Cir. 2011) ("[the surety's] argument that its obligations under the Bonds should be extended fails because the Permit Extension Act, on its face, is inapplicable to the Bonds."  Lexon, 425 Fed. Appx. 190 at 193; see also International Fidelity Ins. Co. v. Waterfront Group NC, LLC, 2011 WL 4715155 (W.D.N.C. Oct. 6, 2011) (No. 3:11-CV-00116-W).

In International Fidelity, the surety on a subdivision bond preemptively sought indemnification from its principal, notwithstanding that the county had not made a claim on the

bond. The parties' agreement provided for indemnification "as soon as liability exists or is asserted against the Surety." Id. at 2. The court held that liability "exist[ed]" because (1) the surety "has sufficiently shown that although Chowan County has not made demand on the bonds, *it could do so at any time*" since the surety could not benefit from the Permit Extension Act; and (2) the developer's work on the development had ceased, notwithstanding its asserted intent to complete the development. Id. at 3 (emphasis added).

The International Fidelity court noted that although the time to build the subdivision infrastructure had expired, the Permit Extension Act provided the developer with additional time. Id. This extension did not, however, apply to the surety because "'the Permit Extension Act specifically does not apply to bond obligations.'" Id. (quoting Lexon, 425 Fed. Appx. 190 at 192). Thus, "the expiration of the original completion date as provided for in the permit issued by the county, coupled with the fact the permitted infrastructure improvements were incomplete, triggered [the surety's] obligation to pay on the bonds." Id. Although the developer asserted that it intended to complete the development (id. at 3), its lender had ceased funding and the evidence indicated that the developer had difficulty obtaining financing for completion of the development. Id. at 1, 4. Accordingly, the court concluded that the surety faced immediate liability under the subdivision bonds, irrespective of when the developer owed performance to the county.

As recognized by this Court and the Fourth Circuit in Lexon and the Western District in International Fidelity, the Permit Extension Act does not apply to the Bonds, which Brunswick County is entitled to enforce without further delay. This lawsuit is not premature.

Bond Safeguard's contention that this lawsuit will impede the Developer's construction efforts because it "creates liability for" the Developer is either irrelevant or unfounded. First, as

set out above, the Permit Extension Act expressly allows Brunswick County to pursue payment from a surety even if the Act allows additional time to the developer.  If that ultimately results in an indemnification claim between the surety and the developer, that is a direct result of the Act. Bond Safeguard and the Developer's complaint is with the General Assembly – not Brunswick County.

Second, it is highly questionable that this lawsuit will impair the Developer's construction efforts.  The Developer has installed minimal, if any, infrastructure since November 2010.  See Pinnix, ¶4.  During that time, the Developer's principal lender has cut off funding and sued them for $78 million, and the Developer has failed to pay certain taxes.  Id. at ¶9.  If the County prevails in this action and enforces the Bonds, then a substantial influx of funding will be available to complete the guaranteed improvements.  Id. at ¶11.  Liability against Bond Safeguard may trigger an indemnity claim against the Developer, but it is required to install the bonded improvements in any event.  Thus, if the Bonds are not enforced, then the Developer must pay to complete all the bonded improvements without surety funding and in its current financial predicament; if the Bonds are enforced, then the Developer may be subject to an indemnity claim, but will have had the property values of the remaining lots that it owns increased substantially in the meantime by the enforcement of the Bonds.  In this context, the enforcement of the Bonds will not "impede" the Developer's installation of the infrastructure, and may in fact significantly hasten it.

2. The Developer Does Not Have *Any* Defenses To This Action.

Bond Safeguard's contention that the Developer should be joined in this lawsuit and permitted to raise defenses is based on a misapprehension of the relief sought by Brunswick County.  This lawsuit does not seek an order requiring that the Developer complete the

infrastructure. Rather, it seeks to recover from Bond Safeguard, as surety, the amounts guaranteed by the Bonds.

The County is not asserting any claims against the Developer, and none of the Developer's purported defenses applies to the County's claims against the Bond Safeguard. For example, in the Affidavit of Mark Saunders, the Developer conclusorily states that it has defenses based on "certain vested rights" in the subdivisions; that the deadline to complete the improvements has been extended by the Permit Extension Act; and that purported agreements between the County and the Developer "bar this lawsuit." See Affidavit of Mark Saunders ("Saunders"), ¶¶ 13-17; Brief at p. 13.

Each of these purported defenses is based on the Permit Extension Act. See Saunders, ¶¶ 15 (deadline to complete the improvements under Improvement Guarantee Agreements "as modified" by the Permit Extension Act has not expired); 16 (Developer has "certain vested rights in connection with permits … which extend the time periods … to complete improvements…"); 17 ("Brunswick County … repeatedly represented … that the …. [Developer] has the benefit of the Permit Extension Act"). As set out above, the Permit Extension Act does not apply to extend deadlines for the benefit of a surety; cannot be invoked for the benefit of Bond Safeguard; and does not prevent a county from enforcing subdivision bonds against a surety even when the developer is permitted additional time to perform.

In sum, because there are no claims against the Developer, it does not need to be a party to this action to raise defenses. Moreover, the defenses the Developer purports to have all are based on the Permit Extension Act, which does not apply to the claims against Bond Safeguard.

3. It is not relevant that the Developer "desires to complete the improvements and control the means and costs … without interference by the Plaintiffs."

Bond Safeguard appears to contend generally that because the Bonds were issued in connection with Seawatch, the Developer necessarily has interests that will be prejudiced by this lawsuit. See Brief, pp. 15-16. But this is the precise result allowed by the Permit Extension Act. Moreover, a judgment rendered in this action will not preclude the Developer from controlling development of their land.

As set out above, the Permit Extension Act specifically contemplates that a county may enforce a subdivision bond even if the Act has provided additional time to the developer. See County of Brunswick, 425 Fed. Appx. at 193; International Fidelity, 2011 WL 4715155 at 2-3. In International Fidelity, the court enforced the surety's indemnity agreement, notwithstanding that the developer had additional time to perform under the Act. Id. Thus, even if this action ultimately impacted the Developer's completion of the infrastructure, that result is authorized by the Permit Extension Act.

Moreover, the Developer's implicit argument – that it will be prejudiced somehow if the County obtains money to be used to install infrastructure that the Developer is required to install – is not compelling. The County is entitled to pursue a judgment against Bond Safeguard, the surety. The County's policy is to use money recovered from a surety to complete the guaranteed infrastructure improvements. Any judgment rendered in this case thus will benefit, not prejudice, the Developer.

4. A judgment against Bond Safeguard will not bind the Developer.

Bond Safeguard next argues that the Developer must be joined because a judgment "will likely collaterally estop the [Developer] from asserting its defenses in a later action by the Plaintiffs …." Brief at p. 16. First of all, this contention is based on speculation that the County

may, at some future time, sue the Developer. That contention has no basis in fact. More importantly, this argument is not a correct application of the law of collateral estoppel.

Collateral estoppel may be used "offensively," as Bond Safeguard suggests, only if the circumstances do not do "injustice to the party." Fate v. Dixon, 649 F. Supp. 551, 558 (E.D.N.C. 1986). "Fairness to the defendant is a critical finding" that is "necessary to the application of offensive collateral estoppel." Id. at 559. Further, collateral estoppel bars re-litigation of the same issue only if "the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." See, e.g., Collier v. Bryant, 719 S.E.2d 70, 76 (N.C. Ct. App. 2011). And the doctrine applies to non-parties only if they were "in privity" with a party to the earlier action – a status that the Fourth Circuit has sharply limited to circumstances in which the non-parties interests were adequately represented in the earlier action. See, e.g., Martin v. Am. Bancorp. Ret. Plan., 407 F.3d 643, 651 (4th Cir. 2005). See also RPR & Associates v. O'Brien/Atkins Associates, P.A., 921 F. Supp. 1457, 1464 (M.D.N.C. 1995) aff'd on other grounds, 103 F.3d 120 (4th Cir. 1996) (table) (rejecting motion to dismiss for lack of joinder because absent party would not be estopped by judgment).

The Developer would not be collaterally estopped by a judgment against Bond Safeguard because – according to both the Developer and Bond Safeguard – Bond Safeguard does not represent the interests of the Developer in this lawsuit. Bond Safeguard cannot raise the Developer's "defenses," which are based on the Permit Extension Act. The Developer is thus not in privity with Bond Safeguard, and will not be collaterally estopped by a judgment in this case.

5.    It is not relevant that a judgment may give rise to a "future indemnity claim by Bond Safeguard" against the Developer.

The fact that Bond Safeguard may have a future indemnity claim against the Developer does not militate in favor of joining the Developer as a party.  As set out above, the Permit Extension Act specifically allows a county to collect from a surety under a subdivision bond even if the time for the developer to perform has not yet expired.  See, supra, Argument Section I, subsection B, subsection 1; see also International Fidelity (enforcing the surety's indemnity agreement, notwithstanding that the developer had additional time to perform under the Act); see also RPR & Assocs., 921 F. Supp. at 1463 (rejecting motion to dismiss for non joinder despite potential for future indemnity or contribution claim).  If Bond Safeguard or the Developer believes that the resulting indemnity claim by the surety against the developer is unjust, then their complaint is with the North Carolina General Assembly.

C.    Bond Safeguard will not incur double, multiple, or inconsistent obligations.

Disposition of this case without joinder of the Developer will not pose a "substantial risk" of Bond Safeguard incurring multiple or inconsistent obligations.  See Rule 19(a).  There is no risk of multiple liability for Bond Safeguard under the Bonds because their plain language  limits the surety's liability to the obligee, Brunswick County.  See Complaint, Exhibits A-H ("No party other than the obligee shall have any rights hereunder as against the Surety.")  Because Brunswick County is the only obligee on the Bonds, Bond Safeguard's obligations as surety under the Bonds will be fully decided by this action.

There is also no risk of inconsistent obligations for Bond Safeguard from this action. Bond Safeguard appears to contend that if the County obtains a judgment in this action, then that judgment might not bind the Developer, which then might raise defenses in an indemnity action by Bond Safeguard.  Brief at p. 15.  This does not constitute an "inconsistent obligation."  See

RPR & Assocs., 921 F. Supp. 1457 at 1464 (subsequent action for contribution or indemnity does not constitute an "inconsistent obligation" under Rule 19). Bond Safeguard's liability to Brunswick County under the Bonds is clear. Whether Bond Safeguard may have indemnity rights against the Developer is an independent issue. That the Developer may have defenses to that independent issue – perhaps based on the Permit Extension Act, which Bond Safeguard cannot raise here as a matter of law – does not render the surety's liability to the County "inconsistent." The Permit Extension Act contemplates liability to a surety even when its principal/developer is allowed additional time to perform. See, e.g., International Fidelity, supra.

As set out in detail above, Bond Safeguard cannot satisfy any factor under Rule 19(a) and, therefore, it cannot demonstrate that the Developer is a "necessary" party to this action. If a party is not a necessary party under Rule 19(a), then the inquiry ends. See Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92-93 (4th Cir. 2005) (describing two-step process under Rule 19(a) and Rule 19(b)). This Court should deny the Motion without further analysis.

## II. The Developer Is Not An Indispensable Party.

Even if the Developer *were* a necessary party, Bond Safeguard's Motion should be denied because the Developer is not an "indispensable" party under Rule 19(b).

To evaluate whether Bond Safeguard has met its burden to show that the Developer is indispensable, this Court must determine "'in equity and good conscience' [of] whether to continue the action with the existing parties or whether the party is so indispensable that the action cannot proceed in its absence." Cellectis SA v. Precision Biosciences, Inc., 2009 WL 6319263, *4 (E.D.N.C. Dec. 8, 2009) (No. 5:08-cv-119-H). Rule 19(b) lists four factors in determining indispensability: (1) the extent to which a judgment rendered in the party's absence might be prejudicial to the person or to the existing parties; (2) the extent to which prejudice

could be avoided by protective provisions in the judgment, the shaping of relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. See Fed. R. Civ. Proc. 19(b).

Each of the Rule 19(b) factors weigh against finding that the Developer is an indispensible party warranting the "drastic remedy" of dismissal and toward allowing this action to proceed. Cellectis SA, 2009 WL at *4 (discussing "drastic remedy" of a Rule 19(b) dismissal). For this separate and independent reason, Bond Safeguard's Motion should be denied.

A.    This Court's Judgment Will Not Prejudice Bond Safeguard or the Developer.

As set out in Argument Section I, subsection B, the Developer is not prejudiced by this action because there is no risk of harm to the Developer's ability to protect its interests.

As discussed in Argument Section I, subsection C, Bond Safeguard is not prejudiced by proceeding without the Developer because there is no risk of multiple liability or inconsistent obligations for Bond Safeguard. Bond Safeguard argues further that it will be prejudiced because it is not a party to the underlying Improvement Guarantee Agreements and because, unless the Developer is joined as a party, Bond Safeguard will be unable to raise its defenses. See Brief at p. 15. Neither of these arguments has merit.

1.    That Bond Safeguard is not a party to the Improvement Guarantee Agreements does not cause it prejudice.

Bond Safeguard does not, and cannot, explain how not being a party to the Improvement Guarantee Agreements causes it such prejudice that this action must be dismissed. The Improvement Guarantee Agreements set forth deadlines by which the Developer must install the infrastructure in Seawatch. Pinnix, ¶¶6-7. Bond Safeguard agreed in the Bonds to pay the

County the cost to complete that infrastructure if they were not completed by those deadlines. Complaint, Exhibits A-C. Consistent with their purpose, the Bonds provide a simple and expedient method for the County to collect the guaranteed amounts. Bell, ¶5. The Improvement Guarantee Agreements are available to the existing parties through discovery and, in fact, have already been provided to Bond Safeguard. Those Agreements do not provide any basis upon which the Developer "in equity and good conscience" is indispensable to this action.

      B.     <u>Even if Bond Safeguard cannot raise the Developer's defenses, it will suffer no prejudice.</u>

Bond Safeguard argues that unless the Developer is joined as a party, North Carolina General Statute 26-12 bars Bond Safeguard from raising its defenses. Even if this is an accurate conclusion, which is questionable, Bond Safeguard has not and cannot demonstrate any prejudice.

North Carolina General Statute 26-12 sets forth procedural requirements that apply in North Carolina courts to actions against a surety. In pertinent part, the statute provides that if a surety is sued by an obligee, the court "**may** join the principal as an additional party defendant," at which time the surety may assert the defenses of the principal. N.C. Gen. Stat. 26-12 (emphasis added). Bond Safeguard takes the position that this "suggests that in order for the surety to assert the defenses of its principal, the principal must be joined." Brief at p. 12. If this is an accurate interpretation, then the statute itself contemplates that a principal is not a "necessary" party to an action against a surety, even if that means the surety is precluded from asserting defenses. Otherwise, the statute would state that a court "*shall* join the principal."

Even if Bond Safeguard were precluded from raising the Developer's purported defenses, that would not result in prejudice. As detailed in Argument Section I, subsection B, subsection 2, each of the defenses to which the Developer has alluded are based on the Permit Extension

Act, which Bond Safeguard is barred from raising as a matter of law. The Permit Extension Act and the cases that have interpreted it allow the County to assert claims against Bond Safeguard even if the Developer has defenses. Bond Safeguard thus has not shown any prejudice.

C.     This Court Need Not Shape Its Judgment to Avoid Prejudice, Because No Prejudice Exists.

As set out in Argument Section I, neither the Developer nor Bond Safeguard is prejudiced by this action. Accordingly, this Court has no need to shape its judgment to avoid prejudice.

Bond Safeguard argues additionally that judicially economy would be frustrated if the Developer is not joined because later lawsuits are likely between the County, the Developer, and Bond Safeguard. But based on Bond Safeguard's own arguments, those potential future disputes should be resolved separately. Both Bond Safeguard and the Developer contend vigorously that the Developer's deadline to perform the improvements has not yet expired. See, e.g., Saunders, ¶ 7. If this is true, then any suit against the Developer to complete the subdivision infrastructure would be premature and not subject to being joined with this lawsuit. The County's action against Bond Safeguard, however, is ripe and should proceed.

D.     This Court's Judgment Is Adequate Without the Developer.

As set out in Argument Section I, subsection A, Brunswick County seeks to recover the amounts guaranteed by the Bonds. It does not seek an order of specific performance requiring that the Seawatch be completed. Bond Safeguard is the only party needed for this Court to render a judgment that enforces payment under the Bonds.

E.     Brunswick County Does Not Have an Adequate Remedy if This Action Were Dismissed.

Proceeding in state court does not provide Brunswick County with an adequate remedy. The mere existence of an alternative forum does not automatically indicate the plaintiff has an

alternative adequate remedy.  See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1055 (3d. Cir. 1988) ("The fact [that alternative forum exists] alone cannot transform [absentee] into an indispensable party").  State court is not an adequate remedy in this case because it will cause additional expense, delay, and will complicate any efforts by Brunswick County to enforce a judgment.

Brunswick County filed this lawsuit in this Court because federal courts require a relatively structured scheduling order, which ensures that cases will move promptly, and because enforcing a federal judgment against a foreign entity is simpler than enforcing a state court judgment.  If Brunswick County is forced to proceed in state court, the lawsuit will start over – wasting several months, since this action was filed on May 9, 2012 – and is unlikely to proceed as quickly as it will in federal court.  Moreover, the case will be unnecessarily complicated and delayed by the Developer's assertion of various defenses, which may apply as to the Developer, but do not apply as to Bond Safeguard.  See County of Brunswick, 710 F. Supp. 2d at 522 (denying motion to add principal because it would "add unnecessary delay and expense").  Finally, federal court judgments may be transferred easily to other district courts, which allows for simpler and more expedient enforcement of judgment against out of state companies, such as Bond Safeguard.  See, e.g., 28 U.S.C. §1963.  If forced to proceed in state court, the County will have to proceed through the entire trial phase, then through the appellate phase, then likely through petitions to the state supreme court, only then potentially to re-litigate these issues when attempting to enforce a judgment against Bond Safeguard in its home state.

Bond Safeguard's position that Brunswick County has nothing to lose if this action were transferred to state court is without merit.  The County will suffer significant prejudice.  Accordingly, Bond Safeguard has not identified a single factor under Rule 19(b) that militates in

favor of a finding that the Developer is "indispensable" to this action.  Bond Safeguard's Motion should be denied.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

The Developer is neither a necessary party under Rule 19(a) nor an indispensable party under Rule 19(b).  Accordingly, Bond Safeguard's Motion should be denied.

This the 20th day of July, 2012.

By:    <u>/s/ Matthew H. Mall</u>
Charles C. Meeker
N.C. State Bar No. 6757
Matthew H. Mall
N.C. State Bar No. 36914
Jennifer Ma
N.C. State Bar No. 39873
Parker Poe Adams & Bernstein LLP
150 Fayetteville Street, Suite 1400
Post Office Box 389
Raleigh, North Carolina  27602
Phone:  (919) 828-0564
Fax:  (919) 834-4564
charlesmeeker@parkerpoe.com
matthewmall@parkerpoe.com
jenniferma@parkerpoe.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true copy of the foregoing was served on all parties to this action by electronic filing through the Clerk of Court using CM/ECF system.

William H. Sturges
Shumaker, Loop & Kendrick, LLP
128 South Tryon Street, Suite 1800
Charlotte, NC 28202
wstruges@slk-law.com

*Attorneys for Defendant*

This the 20th day of July, 2012.

/s/ Matthew H. Mall
Matthew H. Mall
N.C. Bar No. 36914
Parker Poe Adams & Bernstein LLP
150 Fayetteville Street, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602-0389
Phone:  (919) 835-4626
Fax:     (919) 834-4564
matthewmall@parkerpoe.com