IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-123-D
No. 7:12-CV-124-D

COUNTY OF BRUNSWICK, and          )
BRUNSWICK COUNTY PLANNING         )
BOARD,                            )
                                  )
                Plaintiffs,       )
                                  )
        v.                        )          **ORDER**
                                  )
BOND SAFEGUARD INSURANCE          )
COMPANY,                          )
                                  )
                Defendant.        )

The County of Brunswick ("County") and the Brunswick County Planning Board (collectively, "plaintiffs") filed two lawsuits against Bond Safeguard Insurance Company ("Bond Safeguard" or "defendant"). The dispute arises from three incomplete subdivision development projects in Brunswick County, and plaintiffs seek to recover on bonds that Bond Safeguard issued concerning the projects between 2008 and 2010. The court has subject-matter jurisdiction in each case based on diversity jurisdiction. Bond Safeguard, the bonding company and surety, asserts that the three developer-principals are necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure. Accordingly, Bond Safeguard filed a motion to dismiss for failure to join a necessary and indispensable party in each action. In each motion to dismiss, Bond Safeguard recognizes that joining the three developers would destroy diversity, divest this court of subject-matter jurisdiction, and warrant dismissal. Because the arguments in each case are materially indistinguishable, the court resolves each motion to dismiss in this order. As explained below, the developers are not necessary or indispensable parties. Thus, Bond Safeguard's motions to dismiss are denied.

I.

The two cases involve three incomplete subdivision development projects in Brunswick County, North Carolina: Seawatch at Sunset Harbor, Ocean Isle Palms, and Ocean Ridge Plantation (collectively, "developments"). Three developers own the developments: Seawatch at Sunset Harbor, LLC, Ocean Isle Palms, LLC, and Coastal Communities at Ocean Ridge Plantation, LLC (collectively, "developers"). The developers are North Carolina corporations, and plaintiffs did not name the developers as defendants in each action. Rather, plaintiffs seek to recover $7,860,716.01 (plus interests and costs) from Bond Safeguard on seven bonds related to the SeaWatch at Sunset Harbor development and $4,060,344.25 (plus interests and costs) from Bond Safeguard on three bonds related to the Ocean Isle Palms development and the Coastal Communities development.

The Brunswick County Unified Development Ordinance requires developers to guarantee the payment of the cost to complete the infrastructure to be installed in a subdivision. See Bell Decl. ¶¶ 3–4. A developer can provide this guarantee in at least three ways: by posting a letter of credit, by depositing cash security, or by obtaining a bond from a surety financial guarantee company. Id. The guarantee provides Brunswick County a mechanism to obtain payment of costs to complete the subdivision infrastructure. See id. ¶ 5. Here, the three developers obtained such bonds from Bond Safeguard in 2008, 2009, and 2010. Each bond provided that the developer was the principal, the County was the obligee, and Bond Safeguard was the surety. The developers also serve as Bond Safeguard's indemnitors on these bonds.

The developers failed to reach specified construction milestones by the dates set forth in the developers' contracts with plaintiffs. Moreover, the infrastructure in the three developments is not complete. Thus, plaintiffs contend that they are entitled to the money from the bonds in order to complete the infrastructure.

The dispute implicates the Permit Extension Act ("PEA"), 2009 N.C. Sess. Laws 406. The General Assembly enacted the PEA in 2009 in response to the economic downturn's effect on real

2

estate development. In essence, the PEA tolls certain development approval deadlines. See id. §§ 3–4. Thus, for example, if a development is not completed before the expiration of the permit, the developer and municipality need not waste resources by recompleting the permit-approval process. Id. As enacted, the PEA impacted any development approval that was valid at any time between January 1, 2008, and December 31, 2010. Id. In 2010, the General Assembly extended the PEA's termination date to December 31, 2011. See 2010 N.C. Sess. Laws 177. The 2010 amendment also clarified that "[t]his act shall not be construed or implemented to . . . [m]odify any person's obligations or impair the rights of any party under contract, including bond or other similar undertaking." Id. The parties agree that the PEA, as amended, applies to the three developments.

The developers failed to reach the construction milestones described in their contracts. Pinnix Decl. 123 ¶ 8; 124 ¶ 10.[1] Citing the PEA, Bond Safeguard argues that these milestones are tolled, the developers are not in default, and the plaintiffs cannot recover on the bonds. Plaintiffs respond that, regardless of whether the developers are in default on the contracts, Bond Safeguard is still liable on the bonds because the PEA does not modify Bond Safeguard's bond obligations.

In the motions to dismiss, Bond Safeguard asserts that the developers are necessary and indispensable parties to this litigation under Federal Rule of Civil Procedure 19 and notes that the developers desire to be included in the litigation. However, the parties agree that if the developers become parties, then diversity is destroyed, and this court would have to dismiss each action due to the absence of subject-matter jurisdiction.

II.

This court's subject-matter jurisdiction is based on diversity jurisdiction. Thus, the court applies state substantive principles and federal procedural rules. See Erie R.R. Co. v. Tompkins, 304

---

[1]Although the facts and arguments in each case are materially indistinguishable, the cases are separately docketed and at times the docket entries, pagination, or numbering vary between cases. To the extent that they differ, the particular case number (123 or 124) is included before the pincite.

3

U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Federal law governs the question of joinder under Rule 19. See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 125 n.22 (1968). State law, however, may inform the relevant interests of the third parties. See id.; HB Gen. Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1192 (3d Cir. 1996); Krueger v. Cartwright, 996 F.2d 928, 931 (7th Cir. 1993); Whalen v. Carter, 954 F.2d 1087, 1096 & n.8 (5th Cir. 1992); 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1603 (3d ed. 2001).

In determining whether a party should be joined the court asks (1) whether the party is necessary to the action, and if so (2) whether the party is indispensable. See Fed. R. Civ. P. 19(a)–(b); Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005). In determining whether a party is "necessary," the court looks to the party's relationship to the action. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). If a party is necessary but cannot be joined because joinder would destroy diversity, the court must determine whether the party is indispensable. Id. The party making the motion under Rule 19 bears the burden of proof. See Wood, 429 F.3d at 92.

Dismissal of a case for failure to join a necessary party is "a drastic remedy" to be employed "only sparingly." Teamsters Local Union No. 141 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999); see Owens-Illinois, 186 F.3d at 441. The court must consider the joinder issue pragmatically in light of the record. See Provident Tradesmens, 390 U.S. at 120 n.16.

Federal Rule of Civil Procedure 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
    (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
    (i) as a practical matter impair or impede the person's ability to protect the interest; or
    (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest.

4

Fed. R. Civ. P. 19(a). To determine whether the developers are necessary parties, the court considers (1) whether complete relief can be accorded in their absence, (2) whether nonjoinder may impede the developers' ability to protect their interests, and (3) whether nonjoinder may leave Bond Safeguard subject to substantial risk of multiple or inconsistent obligations. See id.

As for whether the court can accord complete relief absent the developers, the court can accord complete relief in the developers' absence. Plaintiffs' only claim for relief is for the money described in the bonds, plus interest and costs as allowed by law. This court can provide plaintiffs such monetary relief from Bond Safeguard without the developers.

In opposition to this conclusion, Bond Safeguard asserts that, regardless of plaintiffs' request for relief, Bond Safeguard has the option to pay the amount due under the bonds or complete the work itself.[2] Although Bond Safeguard has not cited language in the bonds giving Bond Safeguard the option to complete the work itself, the court assumes (without deciding) that Bond Safeguard enjoys this right under North Carolina common law. Cf. MCI Constructors, Inc. v. Greensboro, 125 F. App'x 471, 479 (4th Cir. 2005) (per curiam) (unpublished) (finding that the specific contractual terms of the bonds at issue abrogated this performance option). Nevertheless, even assuming that Bond Safeguard may elect to complete the work itself and that such work will involve interpreting the construction contracts, such interpretation does not necessitate joining the developers. Cf. Owens-Illinois, 186 F.3d at 441. Moreover, although Bond Safeguard argues that its option to complete the projects converts the bonds into something other than purely financial instruments, North Carolina law dooms that argument. After all, when an obligee asserts a claim under a bond on which the principal and surety are jointly and severally liable, the obligee can proceed against

---

[2] Plaintiffs assert that the funds secured by the bonds are insufficient to complete the contracted work. Cf. Compl. 123 ¶ 38; Compl. 124 ¶ 22. If true, it is unclear (as an economic matter) why Bond Safeguard would incur the additional expense of finishing the work rather than simply pay the amount due under the bonds, plus interest and costs.

5

either the principal, the surety, or both. See Crain & Denbo, Inc. v. Harris & Harris Constr. Co., 252 N.C. 836, 839–40, 114 S.E.2d 809, 811 (1960). Here, the bonds make the developers and Bond Safeguard jointly and severally liable. See [123 D.E. 1-2 to 1-9]; [124 D.E. 1-1 to 1-3].

In response, Bond Safeguard argues that this court should treat the bonds at issue differently than other bonds and conclude that the principals are necessary parties. However, the cases that Bond Safeguard cites in support of this proposition are distinguishable. See Town of Huntington v. Am. Mfrs. Mut. Ins. Co., 267 F.R.D. 449, 450–53 (E.D.N.Y. 2010) (involving a second round of litigation over bonds when the principal had previously reached a settlement agreement with the municipality to perform further construction); Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co., 262 F.R.D. 196, 200–03 (E.D.N.Y. 2009) (requiring joinder of principal when suit over underpayment for nonperformance turned on question of who was at fault for construction errors); Cleland Constr. Co. v. Balfour Beauty Constr., Inc., 229 F.R.D. 521, 522–26 (D.S.C. 2005) (requiring joinder of principal when suit involved the same issues already pending in parallel litigation in which the principal was involved). In the cited cases, the courts found joinder was necessary due to the unique facts of each case. The court rejects Bond Safeguard's attempt to use these cases to support a general rule applicable to all bonds or a specific rule applicable to the bonds in this case. Thus, the first Rule 19(a) factor does not support finding that the developers are necessary parties.

As for the second Rule 19(a) factor, the risk that disposing of the action may impair the developers' interests, Bond Safeguard might have some interests materially different from that of the developers such that Bond Safeguard will not adequately represent the developers. See Ohio Valley Envtl. Coal. v. Bulen, 429 F.3d 493, 504–05 (4th Cir. 2005). For example, if the developers are not parties, the outcome may impair the developers' rights, not just as developers, but also as landowners. Cf. Rutherford Cnty. v. Bond Safeguard Ins. Co., No. 1:09cv292, 2009 WL 6543659, at *3–6 (W.D.N.C. Dec. 3, 2009) (unpublished) (recommending allowing the intervention of land

6

owners under Federal Rule of Civil Procedure 24 in suit against surety), adopted by 2010 WL 2231780 (W.D.N.C. June 1, 2010) (unpublished).[3] After all, the litigation may impact whether infrastructure improvements are added to these developments, an important interest for the developers. Although plaintiffs, Bond Safeguard, and the three developers vigorously dispute whether the three developers have the financial capacity to complete the subdivisions in question, if the infrastructure improvements are built, the land will be more valuable and perhaps more marketable. This interest appears to align the developers with the plaintiffs, not with Bond Safeguard.

Bond Safeguard also argues that the developers, as potential indemnitors of the bonds, could incur indemnity liability in each case, and thereby impair the developers' interests. However, the developers' joinder would not appear to impact their potential indemnity liability. See Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 320–21 (3d Cir. 2007); Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 503 (7th Cir. 1980) ("[P]otential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible."). Additionally, if Bond Safeguard chooses to proceed against the developers in a separate suit for indemnity, the developers then could assert defenses.

Finally, Bond Safeguard argues, and the developers agree, Saunders Decl. ¶¶ 17, 19, that each case will require the court to analyze the status of the underlying performance obligations in the contracts as well as the bonds that secure these performance obligations. Although plaintiffs assert that the developers failed to adhere to the deadlines in the contracts, Compl. 123 ¶ 34; Compl. 124 ¶¶ 17–18, plaintiffs do not appear to contend that the developers breached their contracts. Pls.'

---

[3] The standards for intervention under Rule 24 and joinder under Rule 19 are different. See, e.g., Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 230 (3d Cir. 2005); Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 636 (1st Cir. 1989); Aman v. Kelbaugh, 16 Fed. R. Serv. 2d 1314, 1973 WL 154164, at *1 (4th Cir. Jan. 16, 1973) (per curiam) (unpublished).

7

Resp. 18.[4] Rather, plaintiffs argue that each principal's default is not necessary for recovery under the bonds. See Cnty. of Brunswick v. Lexon Ins. Co., 425 F. App'x 190, 192 (4th Cir. 2011) (per curiam) (unpublished); accord Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC, No. 3:11-cv-00116-W, 2011 WL 4715155, at *3 (W.D.N.C. Oct. 6, 2011) (unpublished); Synovus Bank, 2012 WL 3192688, at *4. In reply, Bond Safeguard argues that the construction contracts between the developers and the plaintiffs tie the completion date for improvements to "the vesting period for the Subdivision." [123 D.E. 10-2]; [124 D.E. 11-3]. Moreover, according to Bond Safeguard, the PEA extends this "vesting period," and the developers are not in default. But cf. Synovus Bank, 2012 WL 3192688, at *4. Thus, Bond Safeguard again contends that plaintiffs cannot recover on the bonds.

Bond Safeguard's argument concerning the PEA lacks merit. See Cnty. of Brunswick, 425 F. App'x at 192; Int'l Fid. Ins. Co., 2011 WL 4715155, at *3; Synovus Bank, 2012 WL 3192688, at *4. Nonetheless, due to the developers' interests as landowners, the second Rule 19(a) factor slightly favors finding that the developers are necessary parties.

As for the third Rule 19(a) factor, whether nonjoinder leaves Bond Safeguard at substantial risk of multiple or inconsistent obligations, nonjoinder does not appear to create a substantial risk of multiple or conflicting obligations for Bond Safeguard. Bond Safeguard's liability cannot exceed the amounts listed on the bonds, and joining the developers would not alter this conclusion. N.C. Gen. Stat. § 44A-29; see State v. U.S. Guarantee Co., 207 N.C. 725, 178 S.E. 550, 553–54 (1935); State ex rel. State Art Museum Bldg. Comm'n v. Travelers Indem. Co., 111 N.C. App. 330, 337, 432 S.E.2d 419, 423–24 (1993). With each case proceeding in federal court, there is not a substantial

---

[4] Perhaps plaintiffs do not assert a breach by the developers because of the PEA's tolling provision. A recent North Carolina Court of Appeals ruling construing the PEA, however, suggests that PEA may not provide a defense to the developers. See Synovus Bank v. Cnty. of Henderson, 729 S.E.2d 731 (table), 2012 WL 3192688, at *4 (N.C. Ct. App. Aug. 7, 2012) (unpublished) ("The Act served to toll the running of the five year effective term of the development agreement. The Act did not modify other obligations under the development agreement." (emphasis added)). This court, however, need not reach that issue in order to resolve the motions to dismiss.

8

risk of multiple or inconsistent obligations. Moreover, the developers' ability to raise their own

defenses in a potential separate indemnity action would not conflict with any outcome in the two

cases pending here. See RPR & Assocs. v. O'Brien/Atkins Assocs., P.A., 921 F. Supp. 1457, 1464

(M.D.N.C. 1995) ("The rule protects against obligations that are inconsistent rather than

adjudications that are inconsistent.").

In sum, the developers are not necessary parties under Rule 19(a). Accordingly, Bond

Safeguard's motion to dismiss fails. See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d

377, 385–89 (2d Cir. 2006); Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92–93 (4th Cir.

2005); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404–13 (3d Cir. 1993);

Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1107–08 (4th Cir. 1980).

Alternatively, even if the court assumes that the developers are necessary parties, that

conclusion does not mean that the developers are indispensable under Rule 19(b). Rather, because

joinder of the developers is not possible without destroying diversity, the court must determine

whether the developers are indispensable parties under Rule 19(b).

Rule 19(b) provides:

If a person who is required to be joined if feasible cannot be joined, the court must
determine whether, in equity and good conscience, the action should proceed among
the existing parties or should be dismissed. The factors for the court to consider
include:
    (1) the extent to which a judgment rendered in the person's absence might
        prejudice that person or the existing parties;
    (2) the extent to which any prejudice could be lessened or avoided by:
        (A) protective provisions in the judgment;
        (B) shaping the relief; or
        (C) other measures;
    (3) whether a judgment rendered in the person's absence would be adequate;
        and
    (4) whether the plaintiff would have an adequate remedy if the action were
        dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). In analyzing whether Bond Safeguard is indispensable under Rule 19(b), the

court recognizes that the principal on a bond generally is not an indispensable party in litigation

between the obligee and the surety. See, e.g., United States ex rel. Hudson v. Peerless Ins. Co., 374

F.2d 942, 945 (4th Cir. 1967); United States v. Am. Druggists' Ins. Co., 627 F. Supp. 315, 317 (D. Md. 1985) ("[B]ecause . . . a surety's liability is independent of that of the principal, the principal is therefore not an indispensable party."). In opposition to this general rule, Bond Safeguard argues that the developers are indispensable parties here because the developers have defenses to plaintiffs' claims concerning the contracts, a surety has a right under North Carolina surety law to assert the defenses of the principal, and North Carolina law requires the joinder of the principal in order for the surety to assert these defenses. Specifically, Bond Safeguard argues that the developers enjoy defenses to any of the plaintiffs' breach of contract claims, including the defense that the developers are not in default of their contractual obligations due to the PEA. Bond Safeguard then contends that, ordinarily, the non-default of the developers on the contracts would exonerate the developers' surety from any liability on the bonds. See Carolina Builders Corp. v. New Amsterdam Cas. Co., 236 N.C. 513, 515, 73 S.E.2d 155, 156 (1952). Thus, Bond Safeguard argues that it cannot be liable under North Carolina suretyship law.

Unfortunately for Bond Safeguard, the PEA provides no defense to Bond Safeguard's liability on the bonds even if the developers have not breached the contracts. See 2010 N.C. Sess. Laws 177 ("This act shall not be construed or implemented to . . . [m]odify any person's obligations or impair the rights of any party under contract, including bond or other similar undertaking."). As mentioned, courts construing this provision correctly have concluded that the PEA does not apply to bond obligations. See Cnty. of Brunswick, 425 F. App'x at 192 ("[T]he Permit Extension Act specifically does not apply to bond obligations."); Int'l Fid., 2011 WL 4715155, at *3 ("Therefore, the expiration of the original completion date as provided for in the permit issued by the county, coupled with the fact the permitted infrastructure improvements were incomplete, triggered [surety's] obligation to pay on the bonds."); Synovus, 2012 WL 3192688, at *4 (rejecting a surety's argument that the PEA "serves to toll performance bonds"). Thus, even if the developers benefit from the PEA's extensions of time for certain obligations, Bond Safeguard does not.

10

Next, Bond Safeguard argues more broadly that North Carolina suretyship law permits it to assert other defenses beyond the PEA that the principal-developers could raise. See 74 Am. Jur. 2d Suretyship § 70 (2012). In order to raise such defenses, Bond Safeguard argues that North Carolina law requires the joinder of the principal-developers and cites North Carolina General Statute section 26-12. Section 26-12 provides:

> When any surety is sued by the holder of the obligation, the court, on motion of the surety may join the principal as an additional party defendant .... Upon such joinder the surety shall have all rights, defenses, counterclaims, and setoffs which would have been available to him if the principal and surety had been originally sued together.

N.C. Gen. Stat. § 26-12(b). Bond Safeguard then argues that section 26-12 means that under North Carolina law it cannot raise any of the principal's defenses unless that principal has been joined as a party. In support, Bond Safeguard cites Borg-Warner Acceptance Corp. v. Johnston, 97 N.C. App. 575, 580, 389 S.E.2d 429, 432 (1990), where the North Carolina Court of Appeals held that because the principal was not subject to the court's jurisdiction due to a federal bankruptcy proceeding and could not be joined, the surety could not rely on section 26-12 to assert a statutory defense otherwise available under North Carolina law to the principal.

This court doubts whether section 26-12 helps inform the analysis under Rule 19(b). Even if it does, however, the court notes that the Supreme Court of North Carolina has not interpreted section 26-12. Moreover, in Poughkeepsie Savings Bank, FSB v. Harris, 833 F. Supp. 551, 554 (W.D.N.C. 1993), the United States District Court for the Western District of North Carolina interpreted the word "may" in section 26-12 to mean that joinder under section 26-12 is permissive. This court agrees. Thus, nothing in section 26-12 compels or warrants the conclusion that the developers are indispensable parties.

Next, Bond Safeguard contends that the developers' nonjoinder in these two cases might collaterally estop the developers from asserting certain defenses in a later action between the developers and Bond Safeguard. The developers, however, are not in privity with Bond Safeguard

11

in these two cases. Thus, this argument fails. See, e.g., Turner v. Hammocks Beach Corp., 363 N.C. 555, 558–59, 681 S.E.2d 770, 773–74 (2009); Collier v. Bryant, 719 S.E.2d 70, 75–76 (N.C. Ct. App. 2011).

Finally, plaintiffs contend that proceeding in state court does not provide them an adequate alternate remedy under Rule 19(b)(4). In making this argument, plaintiffs concede that they could pursue their desired remedy to judgment against Bond Safeguard in North Carolina state court. Nonetheless, plaintiffs object that state court is less efficient and the enforcement of the judgment would be more difficult than if they proceeded in these two cases. Although plaintiffs' contention does not mean that a state remedy would be inadequate under Rule 19(b)(4),[5] plaintiffs have a legitimate interest in their chosen forum. See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1413 (10th Cir. 1996). Thus, the mere availability of an alternate remedy does not suffice to render the developers indispensable for purposes of Rule 19(b). See id. ("The availability of an alternative forum is primarily of negative significance under Rule 19." (quotation omitted)).

After considering the record in light of Rule 19(b), the developers are not indispensable parties. Accordingly, the developers' nonjoinder does not warrant dismissal.

III.

In sum, the developers are not necessary or indispensable parties. Thus, Bond Safeguard's motions to dismiss for failure to join a necessary party [7:12-CV-123-D D.E. 9]; [7:12-CV-124-D D.E. 10] are DENIED.

SO ORDERED. This 22 day of February 2013.

JAMES C. DEVER III
Chief United States District Judge

---

[5] See Owens-Illinois, 186 F.3d at 442.

Case 7:12-cv-00123-D   Document 24   Filed 02/22/13   Page 12 of 12